IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Sandra D. Prince, ) | C/A No. 0:10-2256-CMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

  This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Sandra D. Prince ("Prince"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

  In August 2007, Prince applied for SSI and Disability Insurance Benefits ("DIB"). Prince's applications were denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). Prior to the hearing, Prince, through counsel, withdrew her application for DIB. A hearing was held on August 10, 2009 at which Prince appeared and testified and was represented by Donald L. Pilzer, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision dated October 21, 2009 finding that Prince was not disabled. (Tr. 10-16.)

  Prince was born in 1974 and was thirty-two years old at the time of her amended disability onset date. (Tr. 37.) She has a tenth-grade education and past relevant work experience as a cashier and housekeeper. (Tr. 41, 119, 124.) Prince initially alleged disability beginning March 1, 2000 due

to heart problems, but amended her disability onset date to August 15, 2007 prior to the hearing before the ALJ. (Tr. 83, 118.)

The ALJ made the following findings and conclusions:

1. The claimant has not engaged in [substantial gainful activity] since August 15, 2007, the amended alleged onset date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: tachycardia and borderline intellectual functioning (BIF) (20 CFR 416.920(c)).

\* \* \*

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

\* \* \*

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she cannot use ladders; can only occasionally use stairs; can frequently balance, stoop, crouch, kneel, and crawl; should not have concentrated exposure to dangerous machinery or unprotected heights; and should be limited to unskilled work.

\* \* \*

5. The claimant is capable of performing past relevant work as a housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

\* \* \*

6. The claimant has not been under a disability, as defined in the Social Security Act, from August 15, 2007 through the date of this decision (20 CFR 416.920(f)).

(Tr. 12-16.)

On August 13, 2010, the Appeals Council denied Prince's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform [her] past relevant work; and

(5) whether the claimant's impairments prevent [her] from doing any other kind of work.

20 C.F.R. § 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**ISSUE**

Prince raises the following issue for this judicial review:

> Is the commissioner's finding that Sandra Prince does not have mental retardation with deficits in adaptive functioning initially manifested during the developmental period supported by substantial evidence?

(Pl.'s Br., ECF No. 11.)

**DISCUSSION**

**A.    The Listings Generally**

If an applicant is not working and has a severe impairment, the Commissioner must proceed to Step Three of the sequential analysis. At this step, the Commissioner must determine whether the

claimant meets the criteria of one of the Listings and is therefore presumptively disabled. The crux of Prince's argument on appeal is that the ALJ's determination that Prince did not have deficits in adaptive functioning initially manifested during the developmental period and therefore did not meet the criteria for Listing 12.05C is not supported by substantial evidence.

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. § 416.925(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. § 416.908. The Commissioner can also determine that the claimant's impairments are medically equivalent to a Listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a Listing. 20 C.F.R. § 416.926(a).

**B.      Listing 12.05C**

To meet the criteria of the Listing for mental retardation, a claimant must satisfy two parts of the Listing: the requirements of the introductory paragraph, and one of four sets of additional criteria indicating the requisite level of severity.

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment *satisfies the diagnostic description in the introductory paragraph **and** any one of the four sets of criteria*, we will find that your impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (emphasis added); see also Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003); Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001); Hodges v. Barnhart, 276 F.3d 1265, 1268 (11th Cir. 2001).

Section 12.05 states:

Mental retardation refers to significantly subaverage general intellectual functioning *with deficits in adaptive functioning* initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

(emphasis added). Subsection C of Listing 12.05 additionally requires: "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05.

The parties appear to agree that

[a]daptive behavior includes conceptual skills (language and literacy, money, time, and number concepts; and self direction); social skills (interpersonal skills, social responsibility, self-esteem, gullibility, naivete, social problem solving, and the ability to follow rules/obey laws and to avoid being victimized); and practical skills (activities of daily living (personal care), occupational skills, healthcare, travel/transportation, schedules/routines, safety, use of money, and use of the telephone).

(Def.'s Br. at 8, ECF No. 12 at 8.) Here, the ALJ in determining that Prince did not meet the requirements of Listing 12.05C made the following findings:

During a consultative psychological examination of the claimant in March of 2008, Donald Salmon, Ph.D., administered the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III) (Exhibit 8F). The claimant's verbal intelligence quotient (IQ) score was 67, her performance IQ score was 64, and her full scale IQ score was 63. The claimant's level of adaptive functioning belies her IQ scores. The claimant testified that she was in regular classes, rather than special education classes, during most of her years in school. She enjoys reading, particularly horror and comedy genres. She reported that she cares for her two daughters, prepares meals, does other household chores, watches television, and talks on the telephone (Exhibit 4E). She prepares grocery lists, goes grocery shopping with her oldest daughter, and makes a household budget with the help of her daughter. She goes with her daughters to their medical appointments and for visits with her aunt. She has worked as a housekeeper at the SGA level (Exhibit 3D). She reported that she can count change (Exhibit 4E). In 2001, she worked for three to four months as a cashier at the Dollar General store. During that time, she only counted change wrong one time. The record as a whole

> shows that the claimant has adaptive functioning at a greater level than reflected in her IQ scores.

(Tr. 13.) Thus, it appears in this case that the ALJ concluded, notwithstanding that Prince met the first part of the introductory paragraph to Listing 12.05, which requires significantly subaverage general intellectual functioning, that Prince did *not* exhibit the second criterion in the introductory paragraph: the deficits in adaptive functioning.

Prince contends that the ALJ erred in finding that her level of adaptive functioning belies her IQ scores. Prince argues that the reasons offered by the ALJ for concluding that Prince did not have sufficient deficits in adaptive functioning to meet the requirements of Listing 12.05C are specious and submits that, in light of the evidence supporting deficits in adaptive functioning, the ALJ's decision is not supported by substantial evidence.

Prince first points out that she entered special education classes in the middle of ninth grade and remained in them until she dropped out of high school around eleventh grade. Prince argues that this supports a conclusion that the school authorities realized during that time that Prince had cognitive problems, evincing significant deficits in adaptive functioning. With regard to the ALJ's observation that Prince "enjoys reading, particularly horror and comedy genres," Prince argues that the record demonstrates that she reads on a second-grade level. (Tr. 13.) Prince also observes that when asked what she likes to read, Prince responded, "Crime and horror movies and stuff in books." (Tr. 49.) Prince alleges that it is likely that she is referring to primarily watching movies; however, prior to that statement Prince responded that she "[j]ust liked reading" when asked about her hobbies. Prince also affirmed that she was able to read notices from the court. (Tr. 39.)

With regard to the ALJ's discussion of Prince's daily activities, including the care of her daughters, Prince argues that her daughters are teenagers[1] and that most of Prince's statements about her daily activities include her daughters' assistance.  However, Prince concedes that she is not alleging that she is cognitively unable to perform these daily activities; rather, she argues that the fact she may be able to accomplish them does not indicate that she does not have a significant cognitive impairment.  Further, the court observes that Prince's testimony indicated that any limitations in these areas were caused by symptoms of her tachycardia, such as shortness of breath.

Prince also argues that the ALJ's comment that Prince worked as a housekeeper at the SGA level is "the most distorted point" of the ALJ's analysis.  Specifically, Prince argues that her work history demonstrates that she never successfully sustained work in any capacity and only worked for six to seven months as a motel maid.  Additionally, Prince contends that the ALJ's observation that Prince only counted change wrong once while she worked as a cashier at a Dollar General store was unfair in light of the fact that Prince testified she sometimes had difficulty counting money and that she had been fired from two other cashiering jobs.  However, a review of Prince's testimony appears to reveal that Prince initially stated her difficulty with her work at a Dollar General was with the physical exertion required to stock the shelves. (Tr. 42.)  Further, her testimony indicates that Prince was fired from one job because the employer believed that she had removed money from the cash register, but later discovered that it was the manager.  It is unclear why Prince was fired from the other cashiering job, but she mentions bringing in a doctor's note after she was fired. (Tr. 50.)  Prince testified that she was laid off from all of her other prior work.

---

[1] The court observes that at the time of the hearing, Prince testified that her eldest daughter was seventeen years old and her other daughter had just turned ten years old.

In further support of her adaptive limitations, Prince points out that she testified that she was unable to read well enough to obtain a GED and was unable to obtain a driver's license. However, the court observes that Prince testified that she was unable to obtain her driver's license due to nervousness, not a cognitive deficiency. (Tr. 40.) Prince also speculates that the fact that she dropped out of school due to pregnancy could support finding significant deficits in adaptive functioning.

As stated above, the ALJ found that Prince failed to demonstrate deficits in adaptive functioning. Upon thorough review of the record and the parties' briefs, the court finds that Prince has not demonstrated that the ALJ's finding that Prince did not meet this element of the introductory paragraph of Listing 12.05 is unsupported by substantial evidence.[2] The court finds that many of Prince's arguments are speculative or inconsistent with Prince's testimony as discussed above. In evaluating Prince's adaptive functioning, the ALJ specifically examined and discussed aspects of Prince's conceptual skills, social skills, and practical skills. Although Prince challenges some of the reasons offered by the ALJ in support of her finding that Prince did not manifest the requisite deficits in adaptive functioning, Prince's attack on some of the bases relied on by the ALJ is insufficient to demonstrate that, based on the record as a whole, the decision was unsupported by substantial evidence. See, e.g., Johnson v. Barnhart, 390 F.3d 1067, 1071 (8th Cir. 2004) (stating that the claimant did not display significant limitations in "adaptive functioning" partly because of his "ability to function despite a possibly limited IQ"); Miles v. Barnhart, 374 F.3d 694, 699 (8th Cir. 2004) (examining the claimant's education and daily activities in evaluating adaptive functioning in an adult mental retardation case).

---

[2] Further, as explained by the Commissioner, many of the cases that Prince relies on to support her argument are readily distinguishable from this case. (Def.'s Br. at 11, ECF No. 12 at 11.)

**RECOMMENDATION**

For the foregoing reasons, the court finds that Prince has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

September 27, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).